# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 16-40026-TSH |
| DUSTEN JAMES MILLER, ) | |
| ) | |
| Defendant ) | |
| ) | |

### MEMORANDUM AND ORDER ON MOTION TO REOPEN
### PURSUANT TO 18 U.S.C. § 3142(f)

**March 3, 2017**

Hennessy, M.J.

This matter came before the court on Defendant's February 3, 2017 Motion to Reopen the Detention Hearing, pursuant to 18 U.S.C. § 3142(f).[1] Defendant alleges that there exists information that was not known to him at the time of the detention hearing that bears materially on the issue of release. On February 21, 2017, Defendant filed a document styled "Notice of Release Proposal," in which Defendant proposed conditions for release, including residence in a sober house in Dorchester, Massachusetts. The United States filed a written opposition. This court held a hearing on February 23, 2017. The court finds that while there is new information that bears on the issue of release, it is not material and, even if it were, there are no condition or combination of conditions that will reasonably assure Defendant's appearance as required. Accordingly, the motion is denied.

---

[1] The motion, Doc. 113, was originally styled a motion for review of the court's order of detention, pursuant to 18 U.S.C. §3145(b). Such a motion is subject to determination by the presiding District Judge. See 18 U.S.C. § 3145(b). However, at a status conference, Defendant clarified that he sought to reopen the Detention Hearing, and not review the magistrate judge's order of detention.

1

**Background**

Defendants is charged in a superseding indictment with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349, Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §1956(h), and Conspiracy to Commit Identity Theft, in violation of 18 U.S.C. § 1028(f). His co-defendants are his girlfriend and his brother. According to the government, Defendant participated in a number of fraudulent loans involving airplanes and cars and, ultimately, losses of approximately $2 million.

Defendant was arrested on May 11, 2016 in Chicago on the basis of a criminal complaint, and had his initial appearance that day in the Northern District of Illinois. Defendant was appointed counsel and interviewed by Pretrial Services. On May 13, 2016, Magistrate Judge Jeffrey Gilbert held a detention hearing in Chicago, at the conclusion of which Judge Gilbert ordered Defendant detained. A transcript of the Chicago detention hearing is annexed to Defendant's motion, Doc 113, as Exhibit A.

Defendant was produced in this District on June 17, 2016. See Doc. 32. By that time, the grand jury had returned an indictment and superseding indictment. See Doc. 15 and 27. This court arraigned Defendant, noting that a detention hearing had been held in connection with Defendant's arrest. See Doc. 32.

**Discussion**

18 U.S.C. § 3142(f) provides in relevant part that a detention hearing:

may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are

2

conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.[2]

In the context of a motion to reopen a detention hearing, whether new information establishes that conditions exist which will reasonably assure a person's appearance as required depends upon consideration of the Congressionally-mandated factors set forth in 18 U.S.C. § 3142(g).  See United States v. Simpson, No.: 08-CR-733 TS, 2010 WL 129793 at * 1 (D. Utah, Jan. 8, 2010).  Those factor are: the nature and circumstances of the charged offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of the danger to other persons posed by the person upon release.  See 18 U.S.C. § 3142(g).

In support of the motion to reopen the detention hearing, Defendant proposes release on the following conditions, which he claims comprise new information that materially bears on the question of release:

-Residency at the American House, a sober house located at 15 Seaver Street in Dorchester, where, he represents, a bed has been reserved for him;

-Payment of the cost of $175 per week for such residency by Defendant's father;

-Location monitoring to assure his presence at American House;

-Curfew;

-Prohibitions on contacting witnesses or co-defendants, and obtaining a new passport;

-Unsecured $15,000 bond; and,

-Compliance with his conditions of release, including appearing as required.

---

[2] The parties agree that the question of safety of any other person or the community is not at issue in Defendant's release/detention determination.

The government opposes release, arguing that the proposal is not based on new information, that even if it is, the new information is not material to release, and that Defendant remains an unacceptable risk of flight.

This court disagrees with the government that the information is not new. According to the PTS report, Defendant has lived in Houston and Chicago. His detention hearing was held in Chicago, where he was arrested. He has no known ties to Massachusetts. Under the circumstances, particularly that the process against Defendant in this case began as a removal from Defendant's home state of Illinois, it cannot be said that at the time of the detention hearing in Chicago, Defendant knew of potential residential alternatives to pretrial detention in Massachusetts.

I also find that the proposed information arguably "bears" on the question whether conditions exist that will reasonably assure Defendant's appearance as required. One of the matters identified in 18 U.S.C. § 3142(g)(3)(A) that a court is required to consider in determining whether conditions for release exist is a person's "community ties." Defendant's proposed condition that he reside in a sober house in Massachusetts is a tie, albeit temporary, to the community. To some extent, it presents a basis for pretrial services in this district to locate Defendant and monitor his whereabouts.

However, the court finds that the new information bearing on release (in the form of the proposal that includes residency in a sober house and location monitoring) is ultimately not "material" to whether conditions exist that will reasonably assure Defendant's appearance in this case. "Material," it has been said in another context, is a matter that capable of affecting the outcome of a dispute or case. See e.g., Iconics, Inc. v. Masaro et al., 192 F. Supp. 3d 254, 262 (D.Mass 2016) ("a fact is material [in the context of a summary judgment motion] if it could sway the outcome of the litigation") citing Vineberg v. Bissonnette, 254 F.3d 50, 56 (1st Cir. 2008);

compare United States v. Shareef, 907 F. Supp. 1481, 1483 (D. Kan. 1995) (order suppressing evidence that forms basis of charges in federal indictment presents basis to reopen); United States v. Peralta, 849 F. 2d 625, 626-27 (D.C. Cir. 1988) (government's motion to reopen properly granted because lower court denied motion to suppress inculpatory evidence).

In the context of this case, transient residency monitored electronically is insufficient to be considered material. First, such information relates to only one of the four mandated factors a court must consider in deciding whether conditions exist to reasonably assure a person's appearance: the person's history and characteristics. It is not relevant to the nature and circumstances of the charged offenses, or the strength of the evidence.[3] The proposal is not material in one respect because it fails to impact the significance of information relating to these important detention factors.

The proposal relates, as indicated above, only to Defendant's history and characteristics. And even within the assessment of history and characteristics, the proposal does not offer a

---

[3] As to these factors, the case for detention is, since the detention hearing in Chicago, more and not less compelling. When arrested in Chicago, Defendant was charged by complaint; now he is charged by indictment based on probable cause findings of the grand jury. The guideline range of 108 to 135 months estimated for purposes of the Chicago detention hearing is, according to the government's representation at the February 23, 2017, not lower, and may be higher. Based on review of evidence and discovery of additional frauds, the loss is approximated at $2 million. The government represents that its investigation has uncovered powerful evidence of Defendant's participation in the crimes charged. This evidence, which for the most part is not even mentioned at the Chicago detention hearing, includes the recovery from a computer tied to Defendant containing scores of documents relating to the frauds, including the names and personal identifying information of victims of the fraud; evidence that Defendant impersonated victims on the telephone, in false identifications and false documents; evidence that Defendant set up virtual office locations to facilitate the frauds; evidence that Defendant participated in incorporating business organizations whose names and corporate bank accounts facilitated the frauds; evidence that proceeds of the frauds were deposited into accounts controlled by Defendant and used by Defendant to purchase luxury cars: a BMW for $63,000, a Mercedes Benz G55 for $79,000, an Aston Martin.

meaningful assurance against flight. At best it is an attempt to establish temporary roots in the community. But it lacks what might typically be considered a tie that commits someone to remain. For instance, there is no financial commitment: Defendant's father would pay $175 per week for his residence. If Defendant fled, his father would lose, at most, $175 (if paid in advance). The sober house setting does not extract an emotional, therapeutic or educational commitment from Defendant. Defendant would not be living with family. At the sober house, he would not be responsible for a child, parent, relative of even a friend to whom he is obligated or attached. Similarly, neither Defendant nor the record suggest that he has a substance abuse problem, and thus it cannot be argued that living in a sober house would advance recovery for substance abuse. Finally, the sober house does not bring Defendant closer to family. His mother is in Illinois. His father is in Houston. His brother is detained in this district pretrial and serving a five-year jail term for fraud. Instead, the sober house is a place for Defendant to hang his hat. It creates at most a superficial tie to Massachusetts. In this court's view, the proposal does not meaningful provide an assurance that Defendant would not run, or otherwise change the release-detention calculus.

Lastly, in assessing the materiality of this new information, the court considers the full scope of Defendant's history and characteristics as shown by the record and information the government presented at the February 23 hearing. Defendant has a pilot's license. He has used at least two other names including Brendan Hall, an alias in which he leased a residence in Chicago. As noted in the Chicago hearing, Defendant has an Arkansas driver's license in his own name, despite never having lived in Arkansas. At the hearing, Defendant could offer no legitimate explanation for his possession of this false document. In 2008, Defendant was arrested with his brother in a car. In the trunk were documents with hundreds of names and personal identifying information, including at least one name used in the fraud in the pending case. Defendant, the

evidence suggests, has the ability to create false and fraudulent documents. He has been convicted of forgery in connection with the 2008 arrest. In addition, a fair inference can be made that Defendant gave deliberately false information to PTS in Chicago about the length of his employment and his residential history. Despite the fact that Defendant's father is offering to pay for Defendant's residency, when USMS interviewed Defendant's father during the investigation, Defendant's father told Deputy Marshals that he had not seen his sons in five years and would not recognize them in a photograph. Defendant is facing a discretionary guideline sentence of approximately nine years. The court finds that Defendant's proposal, even when assessed in terms of the single factor to which it relates – his history and characteristics – is not material. Accordingly, I deny the motion to reopen.

In the alternative, even if <u>arguendo</u>, the proposal were deemed by the court to be not only new, but material to the question of release, the court would deny release, finding that the proposal fails to offer a combination of conditions that would reasonably assure Defendant's appearance as required.

*/s/ David H. Hennessy*
David H. Hennessy
United States Magistrate Judge